The first case is Employers Insurance Company of Wausau v. Harleysville. Thank you very much. May it please the court. I'm Marshall Patashner for Employers Insurance Company of Wausau. On June 6, 2017 of this year, the New York Court of Appeals in the case Burlington Insurance Company v. New York City Transit Authority overturned the appellate divisions and held that the term caused in whole or in part by an insurance policy and a grant of coverage required proximate causation, negligence, and not mere but for causation. Here, and a grant of coverage is construed broadly in favor of coverage, here we're dealing with exclusion. The court specifically held that those words were narrower than arising out of. I submit that New York would similarly construe the phrase resulting from, which is at issue here, similar to the caused by language in that New York Court of Appeals decision, as requiring proximate causation. Texas courts, and Texas law is relevant for the traveler's policy, has construed the phrase resulting from as requiring proximate causation, and specifically in the directly on point AccuFleet case, which the district court didn't even address below. Here, there is clearly a reasonable possibility that the use of the pump jack was not a proximate cause of the injury. Separate and independent causations are alleged in the underlying action. But do you concede that Texas law applies to the traveler's policy? What I'm suggesting is it doesn't matter because under Texas law there's going to be a duty to defend anyway. But what about this particular exclusion, the mechanical device exclusion? You know, the argument is the New Jersey omnibus statute prohibits that. If Texas law applies to the traveler's policy, does the New Jersey statute apply? I'm focusing on Texas law. I'm not arguing in this argument that the omnibus statute requires the coverage. Texas law requires a coverage under the directly on point AccuFleet case. Here, you have separate theories of factual causation. I'm sorry, just, I'm slow. You say Texas law applies and then you start by quoting a New York Court of Appeals decision. How does that work? Texas, there's two policies here. We shouldn't tax this. We're saying that we're not contesting Texas law. We have the Harleysville policy in New York, which applies to New York law. So you're not contesting the applicability of Texas law to the traveler's policy? No, Your Honor. No. But on the AccuFleet case, which is directly on point, Texas law here requires a duty to defend because there's a factual theory of liability whereby the use of the pump jack was not approximate causation of the loss. Here, the and that's one of the theories of liability. We're assessing duty to defend initially, right? Yes. It's broader than the indemnity requirement. And we're looking just whether there, under Texas law, there's a, I think, a reasonable possibility or potential of coverage. Isn't that right? Yes. This is purely a duty to defend case. And here, in addition, they cannot begin to argue that any of the complaints against the MTA, TBTA, and Hellman cast the pleadings wholly within any In fact, the district judge erred in relying on extrinsic evidence. What about the Bill of Particulars? Is that extrinsic evidence? Yes, Your Honor, because that's not a complaint. Is it part of the complaint? No. Isn't it treated as a pleading under New York law? The case, I've cited case law, it's really not a pleading. It's maybe something in the middle, but it's not a complaint. But even if you look at the Bill of Particulars, all it does say is that there are multiple ways this might have happened. So one way includes the pump jack, but there are other ways that had nothing to do with the pump jack. Why can't we consider the video? The video is extrinsic evidence. And if you do look at the video, and I caution you, it's a speeded up video. It's not real time. When you look at the video, the way I see it, what happened, it looks like there were issues with this lift gate. The lift gate is a piece of metal that sticks off the end of the truck that you put this very heavy battery on. And the weight of the battery and the pump jack and everything. We saw the video. It looks to me like the battery slipped off the prongs of the pallet jack. Well, did it slip off the prongs because there was negligence in the use of a pallet jack, or did it slip off because the back of the lift gate bent down like a diving board? Then it slipped off because not because of the negligence in the use of the pump jack, but because there's a defect in the lift gate, or they put something too heavy on the lift gate, and then it popped up like a diving board. I suppose it's possible for all I know that also the truck was not absolutely level as it should have been. That's a possibility too. In other words, it might be that there was no negligence in the use of the pump jack. And if you look at the deposition testimony, the deposition testimony supports that there was no use, no negligence in the use of the pump jack. You can argue about the bill of particulars, but I'm reasonably confident that the deposition testimony cannot be taken into account in the motion. Understood. But going back to the bill of particulars, it just gives different alternative theories. That was addressed by the Texas court in AccuFleet. There you had a vehicle got in an accident with a mechanical device. And the court said, in whole, he says, look, it's possible. They do allege that it arose from the use of a mechanical device. But he said, there's another theory that it was negligence in use of the vehicle, which would be outside the exclusion. Given that it's a duty to defend case, he'd defend now. And then the indemnity would be determined on whether or not there was actual negligence in the use of the mechanical device. What can we look at? If we take a very strict view about what we can look at in assessing the duty to defend, and we look just at the complaint, for example, what is there in the complaint that suggests that the vehicle itself might've been at the cause? I'm glad you asked that. When you look at paragraphs of the... First of all, there are three complaints here that are issued. When you look at the paragraphs 21 through 30 of the underlying complaint... Do you have a record? Yes. Pages A54 and A55. Thank you. They each allege the ownership, the lease, the control, the operation of a vehicle. There's no basis for them and no reason for them to allege that liability based upon the control, lease, ownership, operation of a vehicle, unless they're alleging a claim arising from the use of a vehicle. But they're just alleging status of the different parties in the vehicles. What about allegations of negligence in connection with the vehicle? Where's that? It's a very general allegation in that complaint. Where is it? I'm saying there is nothing very specific about that, but why would you allege? And again, it's a reasonable possibility. Why would you allege a vehicle as having a status if it had nothing to do with the loss? They're clearly implying, and a reasonable reading of this complaint is it has something to do with the loss. But if you want something very specific, you can go to the monarch's third-party complaint on a record at 1741. In the seventh paragraph of that complaint, they specifically allege negligence in causing a battery to fall off the vehicle. And in paragraph seven of Miller's third-party complaint, in a record at page A1755, they make the exact same allegation. Neither of these complaints, none of those three complaints, allege use of a mechanical device, mention a mechanical device, mention a pump jack, it's completely not there. And those complaints are in the state court action? Yes. Are you talking about? Yes. Those are third-party complaints. Hellman was not sued directly, Your Honor, because Hellman was the employer. So there was a third-party complaint by Monarch and a third-party complaint by Miller, both against Hellman. And in those third-party complaints, they specifically allege that the battery fell off the truck. Can you just give me the pages again? Yes. A1741 is the monarch's third-party complaint. You would look at the seventh paragraph. And A1755, you would look at paragraph seven of the Miller complaint. Wait. It says, I'm looking at the seventh, and it says that it is alleged in the Plano's verified complaint. So that's by reference to the one we just looked at that didn't, you said it had very general allegations of how this accident happened. Right. But then it goes on at the end. It says, cause personal injuries as a result of a large battery that was being offloaded from the truck falling on top of him. Where's the negligence? It's connected to the motor vehicle. It says that the cause of the accident was, I mean, I don't think you need to have to say the legal term negligence. These are factual allegations. The cause of the accident and his injury was a large battery that was being offloaded from a truck. So that's the tie-in to the claim that arises from the use of a truck. And again, it's a reasonable possibility test. I mean, it's not, it couldn't be construed as negligence and use of the truck when you have that specific allegation. I think a reasonable person would say that this is a claim from, from rising from the use of the truck. Are the allegations any more specific with respect to the pallet jack? There are no allegations regarding a pallet jack. There's nothing in these complaints regarding a pallet jack or the pump jack, however you call it, nothing at all. What about the bill of particulars? There is the bill of particulars, but then they give alternative theories under both New York law and under Texas law. If there is a theory of liability, which is outside the scope of the exclusion that's being alleged, then you have a duty to defend. This is not a duty to identify. This is a duty to defend. So the fact that they do have alleged one theory that might be barred doesn't mean the whole claim is barred because ultimately a jury could find this happened from where it was parked. This happened because it was a defective lift gate. There's a lot of different things that a jury could find as to why it occurred. But until then, we're entitled to duty to defend. I would like to address, and I know I'm out of time a little bit, the other insurance priority coverage issue. Please go ahead. Just take a couple minutes. Thanks, Your Honor. Walsall has an excess other insurance provision. In fact, nobody disputes that that excess applies to Hellman. It applies to loss arising out of use of autos. The endorsement they cite is an endorsement for a very specific project, and on the endorsement it says for this project, for off-site only, the only reasonable construction, the only purpose for having that language on there was to indicate that these people are additional insurers, and this endorsement applies to that one specific project. Travelers has a primary other insurance provision. They are the insurer for Monarch, the long-term lessee of the vehicle. There's a hired autos endorsement, and there's no dispute their policy says for owned vehicles, we are primary. And there's no dispute under the hired auto endorsement that this vehicle was a described vehicle. They ignore in the arguing that this treat this vehicle as an owned vehicle language. They ignore that this endorsement at the top says it applies and modifies the business auto coverage form. They're trying to argue that this definition term only modifies other portions of this endorsement. In fact, the definition of whether you own the auto or don't own the auto has nothing to do with the rest of the endorsement. The only effect it could have would be on the priority of coverage issue. If there are two primaries, do they typically then just divide in half the costs? Or is there any other application of policy language that would govern their liability? Well, under New York law, there's no dispute that when you, at Texas law, when you prorate and figure out primary versus excess, you look at the other insurance provisions. But assuming two policies have conflicting provisions, or both say they're primary or both say they're excess, then under New York law, unless the policy specifically provides a different way, you do it prorate on policy limits. I think here, if I recall, both policies have the same policy limits. So it doesn't matter whether it's prorate or equal shares. Okay. Turning to- Your time has expired.  Yes, Your Honor. They're turning to the Harleysville provision. The Harleysville, they admit their primary. They admit they have a primary other insurance provision for Hellman. And with respect to MTA, TBTA, there's no dispute that there's an insured contract where Monarch, I'm sorry, where Hellman agreed to indemnify MTA, TBTA, and that's why there's a primary provision there. The only one last thing I'd like to mention is the employer's liability exclusion. They mentioned that one of the cases I cite was overturned by this court. However, the endurance case, when you look at the Second Circuit decision, the one thing that they did accept was the insured means the insured seeking coverage and applies it exactly the way that I suggested in my briefs. Thank you, Your Honor. Thank you very much. We'll hear from counsel for Harleysville, please. Good morning. May it please the court, Lance Kalick for Harleysville Preferred Insurance Company. Let me start by talking about the movement by mechanical device exclusion and the language resulting from. Counsel cites to the- Could you actually start a little bit before that and say what are we entitled to look at in assessing that? Sure, so we believe that you have to look in this case at the bill of particulars. Number one, I think the bill of particulars is a pleading and it is something that a carrier is entitled to look at. You start with a complaint and then we augment that by looking at the bill of particulars. Correct, and I think a carrier's entitled to look at that and to determine the boundaries of its obligations. What the bill of particulars came to be, that is to say, was it volunteered, was it in response to the question by the court, by other parties? It was produced in the underlying state court litigation, I believe, as a matter of course. I don't know if it was specifically requested by the defendants in that case. This isn't, though, a case where I, unlike the IBM case in the Second Circuit, where we're suggesting that you look beyond the extrinsic, you look beyond the four corners of the pleadings to find extrinsic evidence. Because if you look at the complaint, and some of the suggestions here indicate that, if you look at the complaint, there's nothing that would trigger a duty to defend under our policy in any event. There was nothing in the initial complaint that said that, first of all, Hellman wasn't sued at all. And there was nothing tying the MTA or the TBTA to the use of a vehicle. So our policy is an auto policy. But the battery that was getting delivered had to be delivered through the use of a vehicle. The vehicle owners and lessors were named as defendants. The complaint was extraordinarily vague about the theories of recovery. And if we do look at the bill of particulars, we see that there was a negligence claim related to, in regarding to failure to properly maintain the equipment or ensure that such equipment, including but not limited to the gate. Which is part of the vehicle, was in good working order on the motor vehicle bearing the New Jersey State plate. Why doesn't that raise enough of a question about the safety of the vehicle to trigger a potential duty to indemnify and therefore a duty to defend? So the bill of particulars absolutely, if you look at the bill of particulars, absolutely falls within our insuring agreement. Because I think from the bill of particulars, it would be fair to say that this arose out of the use of an auto that may have been used by an insured, Hellman or the MTA or the TBTA. That same exact document says that this resulted from the use of a pallet jack. And so the same- I'm sorry, where does it say that and precludes these other theories that I see laid out in the bill of particulars? Am I just misreading this? Right, so I think the district court's decision is correct in this respect. That all of the theories are premised on the operative act of the use of the pallet jack. And I think if you go to the Court of Appeals decision in Mount Vernon- Just to follow up on Judge Carney's questions. There's a page and a half of alternative ways the accident happened in the bill of particulars, including the elevation related risk, which I think means they parked too much on a hill so the thing slid out. And then the gate was not in good working order, the lift gate. So why is everything in that as alternative ways of committing negligence, trumped by the pallet jack clause? Because the use of the pallet jack in the bill of particulars, that being alleged, is enough to trigger the exclusion with respect to all theories of liability. It's the operative act. I don't understand that. Why is that? I mean, the district court looked generally at moving the battery. That was being accomplished in a number of different ways. And the vehicle, I find it difficult to exclude the possibility that the vehicle and the lift gate didn't contribute in some way to that, particularly on a duty to defend where we're talking about potential theories of recovery as opposed to indemnity. Why is that excluded by this document? And I think you have to look at, and the district court cited a case, US Fire versus New York Marine, that quotes basically the Mount Vernon and the New Hampshire cases from the Court of Appeals. And one of those cases deals with an assault, an assault exclusion. And in that underlying action, they alleged, well, the injuries occurred from the failure to supervise. And the injury may have occurred because there wasn't sufficient lighting. And the injury may have occurred because of the actual assault. And what the Court of Appeals said is, look, we don't look at the theories of liability. What we look at are the operative act that creates the injury and the accident. And that's what the district court said, is under all of these theories, we know, from the undisputed facts here and from the bill of particulars, that the operative act that caused this accident, not in a proximate cause sense, but certainly they were using the mechanical device at all times throughout this process. But for causation? Correct. And how do we know that? And that's where I wanted to start the argument. Callahan in his deposition said that at the time it slipped, the pallet was resting on the gate. It was not being raised at that time by the pallet jack. Correct. So why is that not relevant? It's not a material difference in fact. Why? If you look at- At the time it had rested the battery on the lift gate. What he said in that deposition was that there was a momentary stoppage of one to two seconds. As they're moving the pallet jack to the back of the truck, they pause, and that's when it started to teeter. Well, they paused and descended. No, no, there's no facts in the record that the lift gate- The lift gate, you know what I'm talking about. The pallet has two levels. Oh yes, they brought the pallet down. The pallet jack in between the two levels, so there's wood underneath the pallet jack when it's not working. So when the pallet jack descends and puts the load on the ground, what's touching the ground is not the pallet jack, it's the wood. Callahan testified the wood was touching the gate, the lift gate, at the time it slid off. Why is that not relevant? Because they were still using the pallet jack. So it's not, it doesn't have to be the negligent operation of the pallet jack. It's the movement of property by a mechanical device. That is a general liability risk. So you're saying that even if the facts were established, if there were a video showing exactly what happened, and they showed that the pallet jack had done just as Judge Doney described, and the pallet jack was then bearing no weight. And then we see the lift gate fail, even though it's supposed to be up to 3,000 pounds. The lift gate fails. It comes down, the battery topples over. And that were established. You're saying that your policy would have nothing to do with, you would have no duty to defend or to participate even in that circumstance, is that right? I think that that is certainly a different case. Are you saying you would have no duty to defend in that case if those facts were established? I think if the injury was not caused by the movement of the property by a mechanical device, it was caused by something. I'm asking if it were visibly, if you could see that the pallet jack didn't contribute to the injury, except having moved and placed the battery on the lift gate, and what happened is the lift gate fails. I think that case would be a duty to defend, because I think that case is more like the forklift case. So what I'm having difficulty is excluding that possibility based on the bill of particulars and the complaint we have here. Right, and again, it's because the operative act is that the property was being moved by the mechanical device at all times throughout this process. And it was, it had not come off of the pallet jack. The pallet jack was not a mere happenstance. It was an instrumentally and dominant part of this case. And- I think we have the argument then. Why don't you take just a minute to finish up? Sure, and the resulting from language in the exclusion is the same resulting from language in the grant of coverage under the auto policy. And our auto policy is symbiotic with the GL policy. So the general liability policy excludes coverage for injuries arising out of the use of the auto. They actually use the word arising out of. Our grant of coverage is we provide coverage for injuries resulting from the use of an auto. There's no gap in coverage. Our coverage for autos is as broad as their exclusion for autos. So you would say the duty to defend, they're mutually exclusive. Correct. But our exclusion uses the same resulting from language. It's not approximate cause resulting from language. It's the same language that's in our insuring agreement that provides coverage. I think we have the argument, okay. If I could just, one more brief thing. One thing, I think I might have mentioned Mr. Delaney's name was Callahan, it was Delaney that was his deposition, right? Yes, yes. I misspoke and I apologize for that. Our resulting from exclusion or mechanical device exclusion, the counterpart is actually in their policy. So they give back coverage under their auto exclusion for injuries resulting from the use of a mechanical device. So it's not like the insured is being left without coverage. They cover injuries resulting from the use of a mechanical device. We do not. Thank you very much. We'll hear from Travelers. May it please the court, Joanne Engeldrum for Travelers Property Casualty Company of America. Just microphone down a little bit so. Certainly. Thank you. Is that better? Yeah. The employer's liability exclusion in our policy precludes coverage for bodily injury to an employee of an insured, if he's injured in the course of his employment. It's undisputed that the allegations of the underlying complaint are that Mr. Cavateo was killed during the course of his employment with helmet. Our position is that the employer's liability exclusion precludes coverage as to helmet. Looking to the MTA and TBTA, where, as here, the duty to defend cannot be determined by looking at the allegations of the complaint against MTA, TBTA. Texas courts look to extrinsic evidence. And Walsall concedes that Texas law applies to the traveler's policy. And looking to the extrinsic evidence, the police report, the incident report. So the traveler's policy, it's now conceded that Texas law applies. But why does it have endorsements from 47 states about motor vehicle laws attached to it? Are those just unimportant? Including the New Jersey endorsements here. The named insured, the first named insured, is a parent company and has operations and businesses throughout the United States. So for that reason- Including Monarch. Including Monarch. And for that reason, there are endorsements specific to all of the states that the insureds under the policy do work. But why? If Texas law applies, if the choice of law decision is Texas law because of CED, is the parent. Why do you need all the other states' endorsements if the Texas law applies to the policy? Texas law applies to the interpretation of the policy. Under certain circumstances, for example here, where the vehicle at issue is garage or registered in the state of New Jersey, you look to a specific New Jersey endorsement. As to why, it's unclear. The insured could have asked for it. The broker could have asked for it. You look to it for what? You look to the New Jersey attachment for what? For the terms of the policy. So for example here, the vehicle at issue was registered in New Jersey. So in looking at the New Jersey changes endorsement, that endorsement modifies who is an insured under the policy for purposes of vehicles that are registered in New Jersey. Is that the only difference? In that particular endorsement? The question is, does the New Jersey statute apply? because it applies to vehicles in New Jersey. General? The New Jersey Omnibus Statute does not apply here. In looking at the policy, the endorsement modifies who is an insured under the policy for vehicles that are registered in New Jersey. And what it does is, the policy provides that who is an insured is a permissive user of a covered auto, here the truck, and says accept anyone while moving property to or from that auto. The endorsement takes away that exception to who is an insured for insurance limits required by the New Jersey Omnibus Statute. So if that's the reason the New Jersey law requires that change and takes away that exclusion, why doesn't the New Jersey Omnibus Statute apply to get rid of this mechanical device exclusion as well? Because Texas law applies to our policy, and if you look to that endorsement in our policy in New Jersey- You just said some New Jersey law applies to it as well. No, New Jersey law does not apply to our policy at all. By virtue of that endorsement, who is an insured is modified and references the Omnibus Statute. But that same endorsement says that all other provisions in the policy remain the same, i.e. the insuring agreement and the exclusions. And in fact, if you look through the policy, there are specific endorsements to 47 different states. And where the insured had wanted to take out certain exclusions, they did so by virtue of the endorsements. For example, if you look to the New York endorsement, which is not an issue here, that takes out the mechanical device exclusion. So otherwise, you're saying it just modifies the who is an insured. Correct, based upon the policy language. You look to the policy language and it modifies who is an insured. And then once it is determined who is an insured, then you go to the insuring agreement and then you go to the exclusions to determine whether or not there's coverage under the policy. So was that definition of who is an insured occasioned by a New Jersey law requirement? Or just was it consensual between the parties? It was added, it's not in the record whether or not it was requested by the insured because, and respectfully, that's why it's in the policy is not at issue. It's what's at issue is what does the policy say and the coverage afforded under the policy. And while we dispute that Hellman is an insured under the policy, it's really unimportant because the employer's liability exclusion applies to preclude coverage based upon the allegations. And what about MTA and TBTA? Under Texas law, which Walsall concedes applies here, Texas law allows the consideration of extrinsic evidence, whereas here, it's not clear whether or not coverage is triggered under the policy. If you look to the complaint- So what your position is ultimately, I mean, TBTA and MTA weren't employers. Correct. So the employer's exclusion doesn't apply, so what exclusion are you relying on? The mechanical device exclusion applies to preclude coverage. And so we have the same argument that we just were discussing with your colleague about what we can look at there. And you're saying that we can look at extrinsic evidence and that establishes enough that it was the pallet jack that caused the problem and not the vehicle? Yes, Your Honor, because under Texas law, you can look to extrinsic evidence. And then if you look to the incident report, and if you look to the police report, separate and apart from the bill of particulars, those reports indicate that while the battery was being moved by the pallet jack to the edge of the truck, they turned the pallet jack and the battery went off the truck, killing Mr. Caviteo. But, I mean, that really does also relate to the merits of a liability claim. The basis for negligence, what exactly happened here. And Texas law has a fairly broad understanding of the duty to defend, right? It has to be potential coverage. So I'm not entirely sure. What precisely do you point to? That's the police reports that you rely on most heavily? The police report and the incident report. I just want to note that the application of the mechanical device exclusion does not hinge upon the theory of liability that alleged and negligence, but rather the operative act resulting in the accident. If you look at the language of the policy, it's not- You're saying there can be more than one, that it could be both the pallet jack and how it was parked, and they were all causes, but four causes, because they had to use a pallet jack to move it, that would have been fine, but the truck was parked wrong. But that still means the pallet jack moved it. That is correct. So even though there are multiple theories of liability, you look to the actual facts resulting in the accident. And because the exclusion- Insofar as they're clear, I mean, that's what- Insofar as they're clear, that's correct. The exclusion does not preclude coverage for liability for bodily injury caused by the movement of property. It precludes coverage for bodily injury resulting from the movement of property by a mechanical device. And it simply- But for the movement of the battery by this mechanical device, there would have been no accident. That is correct. It is unavoidable not to conclude that the movement of the battery resulted in this bodily injury. Even if it wasn't the principal approximate cause of the injury. Correct. Thank you. I think we have- Can I just ask one more question? I'm getting back to the state law, the New Jersey statute and the Texas law. I always thought that if you have a multi-state corporation like this with a sub that's monarch, like in New Jersey. That if New Jersey law, for example, required all motor vehicle insurance to have $100,000 of liability coverage. But Texas law only required 20,000. That the New Jersey requirement would apply, and that's why you have an endorsement like this to a policy. Am I wrong about that? I think perhaps what you're referring to is that there is a coverage extension portion in our policy. And that hinges upon where the accident occurred. So it provides that where the vehicle is being used out of state from where it's principally garaged and registered. It will be required to maintain or have the minimum insurance requirements of the state where the vehicle is being operated, which is a separate issue from here. But isn't that occasioned by the power of the New Jersey law? In other words, it's not just something you agreed to between the insurer and the insurer. It's because states have different motor vehicle laws with different financial responsibility limits. That if you house a truck in New Jersey, even though you're headquartered in Texas, you've got to comply with those New Jersey financial responsibility laws. Am I wrong about that? Well, and this policy does afford those limits of liability. And- But am I right that New Jersey law then applies? No, respectfully no, in that Texas law applies to the policy. And the omnibus statute does not write out the exclusions of a policy. That's a function of New Jersey law, case law, that doesn't apply here, simply. It's Texas law that applies. Okay, thank you. I think we have the arguments. Mr. Patashner, you have two minutes. Yes, thank you. I'm going to get right to it. The fundamental issue is, when you take a look at the US Fire Insurance Company case that the district court relied on, that uses a rising out of language. This is resulting from language. And I started with the New York Court of Appeals case, which just came down, which rejected that the similarity caused by language is the same as a rising out of. Rather, in a grant of coverage, which is construed broadly, they said, nevertheless, it requires proximate causation slash negligence. Now, in this case, when they're- Just remind me of the name of the case, please. Sure, Your Honor. It's Burlington v. New York City Transit Authority. How recently was it? June 6th, I believe. Do you supply us with copies? Honestly, I looked at the rules, and I didn't see a rule to supplement my briefs with this new case. There is one, but go ahead. I do apologize. Bill 28J. Thank you. But so here, under Texas law, first of all, definitely you require approximate causation. New York law, based on this new decision, it appears you require, and I would suggest that Woodward does require approximate causation, and they overturned the appellate divisions. And here, you remember, they're comparing resulting from an insuring agreement, which is construed broadly in the favor of coverage, to resulting from in an exclusion, which is construed narrowly. To answer a few questions, I believe, the bill of particulars was actually served in response to a demand for a bill of particulars similar to discovery. What is your answer to counsel's position that the CGL policy and the auto policy are mutually exclusive as to duty to defend? That's simply not true, because you could have a complaint that alleges coverage under both. There's a potentiality of coverage under both. If that's the way they wanted to do it, they could, in the other insurance agreement, say if you have CGL coverage, then we don't have a duty to defend or we're excess. They didn't say that. They said there's other applicable insurance, and the duty to defend is very broad. You can have, and it happens all the time, where you have complaints under DNO and CGL policies that ultimately, one policy's going to apply. But the- And what about the position that because a pallet jack was involved, because a device was involved to move the battery, that that then invokes the exclusion we've been discussing? Well, that's what was- That mere, yes, so that's what you're talking about, you're rising out of? The proximate causation versus but-for causation. You're saying it is proximate? Yes, it most definitely is proximate causation. The Texas courts have ruled 100% for the Texas policy, and the New York court most recently, when they overturned the appellate divisions in the meaning of cause by, indicate that resulting from, and I don't see a verbal difference, requires proximate causation. I'm sorry, just to finish, it requires proximate causation in order for- The exclusion to apply. The exclusion to apply. In other words, if the, and here, the pallet jack, and I believe, pallet jack was actually being used at the time to move anything. It was lowered to the deck of the, the battery was lowered to the deck of the lift gate. So nothing was being moved at the time. Yes, it was only- What's concerning me here is that it feels like we're debating the merits. I mean, was there negligence and what was the cause? Whereas in a duty to defend case, we talk about whether there's possible- That's my point. There's a possibility that the pallet jack, if they used a crane to move it from one part of the truck to the lift gate, the lift gate could have failed. I mean, you can go, so there are many- That's why I think the question of whether it's but for approximate cause is important. Maybe we can get a copy of that and a letter as to how it applies for both sides, maybe? Sure, why don't you please give us a letter submitting the New York case that you just cited. And opposing counsel also give us a letter, two pages long, explaining why you think it's applicable. Okay, in response. And by the way, that's only for the Harleysville policy issue, the Hellman. The other policies under Texas law, they clearly rule that. Now, let me just say one more thing. So, excuse me, and let me ask you, it's Friday, it's the holiday weekend, how about by the end of next week? Thank you, Your Honor. With Texas law, Texas has a very strong eight corners rule. You can't go outside the complaint. There's a narrow exception. They call it the narrow exception. Here, they're trying to use extrinsic evidence to basically make the narrow exception a rule. And the narrow exception doesn't apply here because MTA, TBTA, and Hellman are not excluded by name or description. The truck is not expressly excluded from coverage. Is this the extrinsic evidence part of the law? Yes. In Texas, they follow a very strong- That assumes that we're talking about extrinsic evidence, right? Yes. And you can't use extrinsic evidence to negate a duty of defense. It's clear under New York law. Texas law, they argue that you- But if our view is that what we're talking about is not extrinsic evidence in this sense, then that portion of Texas law is unimportant. I understand that, but if I recall, Travis's attorney said they're relying almost exclusively on the extrinsic evidence, the police reports, the accident reports. And Texas law is very clear on the eight corners rule. There's something called a narrow exception, and that's only big picture items that don't apply here. Whether or not you don't qualify, you clearly don't qualify as an insured. Whether or not, for example, the truck is excluded from the policy, which doesn't apply here. Whether or not there's a dispute, the policy exists in the first place. And in addition to having to fit within one of those things, the Texas courts say, where the issue of whether the exclusion applies is being litigated in the underlying case. Clearly, you can't use extrinsic evidence. And what's clearly being litigated in the underlying case, what was the cause of this accident? Why don't you finish up? Okay, yes, Your Honor, thank you. We've let you have significant additional time. Just one last point, please, and close. Actually, Your Honor, that was my last point, so thank you. Thank you very much. Thank you. Well argued, both. We'll take the matter under advisement and get a decision to you as soon as we can. Thank you. Thank you.